UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | | |
|---|---|---|---|
| Joseph Dickerson, | ) | **ORDER** (*Consolidated Cases*) | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action Nos.: | 8:19-cv-01158-RBH (Lead Case) |
| | ) | | 8:19-cv-01316-RBH |
| Bryan P. Stirling, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| _____ | ) | | |

In this consolidated action, pro se Plaintiff Joseph Dickerson alleges his constitutional rights were violated as a result of his transfer from state prison in South Carolina to a private prison in Mississippi. The matter is before the Court for consideration of Plaintiff's objections to the Report and Recommendation ("R & R") of United States Magistrate Judge Jacquelyn D. Austin, who recommends granting Defendant Bryan Stirling's motion for summary judgment.[1]

## Legal Standards

### I.  Review of the R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report

---

[1]  The Magistrate Judge issued the R & R in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.).

to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II. Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A

2

dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## **Background**[2]

Plaintiff is committed to the South Carolina Department of Corrections ("SCDC") and has been serving a fifty-year prison sentence for armed robbery, criminal conspiracy, and cocaine trafficking convictions since 2000. *See* ECF No. 26 at ¶ 17; ECF No. 42-2 at ¶ 2; ECF No. 42-5 at p. 1. On June 18, 2018, Plaintiff was removed from the general population at Ridgeland Correctional Institution and sent to Kirkland Correctional Institution, and then on June 21, 2018, he was transferred to a private prison in Mississippi—the Tallahatchie County Correctional Facility—owned and operated by

---

[2] The R & R thoroughly summarizes the factual and procedural background of this consolidated action. The Court briefly summarizes that background and, consistent with the R & R, cites to the docket entries from the lead case, No. 8:19-cv-01158-RBH.

3

CoreCivic, Inc. *See* ECF No. 26 at ¶¶ 13, 17, 19, 23; ECF No. 42-2 at ¶¶ 2–4. Plaintiff and forty-seven other SCDC inmates housed at various prisons throughout South Carolina were identified by SCDC officials as "problematic" based on suspected involvement in gang and/or contraband related activities and transferred to the Mississippi prison following a deadly riot in April 2018 at Lee Correctional Institution in Bishopville, South Carolina. *See* ECF No. 26 at ¶¶ 7–16; ECF No. 26-4 at ¶¶ 3, 10–31; ECF No. 39-1 at ¶¶ 5–8, 15.[3] Defendant is Director of the SCDC and signed an Inmate Housing Agreement with CoreCivic, Inc. authorizing transfer of the forty-eight inmates. *See* ECF No. 39-1 at pp. 4–17.

In February 2019, Plaintiff filed a complaint in state court against Defendant asserting state and federal claims and seeking declaratory and injunctive relief. *See* ECF Nos. 1-1 & 26-4. In April 2019, Defendant removed the case to this Court (docketed as No. 8:19-cv-01158-RBH), and Plaintiff subsequently filed a second case in this Court (docketed as No. 8:19-cv-01316-RBH) against Defendant asserting claims under 42 U.S.C. § 1983 and seeking monetary damages. *See* ECF No. 26. The Magistrate Judge consolidated the cases pursuant to Fed. R. Civ. P. 42(a) and combined both complaints to form one single Amended Complaint.[4] *See* ECF Nos. 25 & 26. The lead case is No.

---

[3] SCDC officials claimed cell phones escalated the riot at Lee, and although Plaintiff was not involved in it and was housed at another prison (Ridgeland) at the time, he had prior disciplinary sanctions for possession of cell phones and contraband. *See* ECF No. 26 at ¶¶ 8–9; ECF No. 39-1 at ¶¶ 5–8, 15; ECF No. 39-2 at ¶¶ 6–7; ECF No. 42-2 at ¶ 4.

[4] Both complaints were verified and therefore the Amended Complaint serves as an opposing affidavit for summary judgment purposes. *See Carter v. Fleming*, 879 F.3d 132, 141 n.8 (4th Cir. 2018) ("'[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" (alteration in original) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991))). The Court is mindful of its duty to liberally construe Plaintiff's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed *pro se* is to be liberally construed" (internal quotation marks omitted)). *But see United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("Although courts must liberally construe the claims of *pro se* litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate." (internal citations, quotation marks, ellipsis, and brackets omitted)).

8:19-cv-01158-RBH.

On July 23, 2019, Plaintiff was transferred back to an SCDC facility in South Carolina. *See* ECF No. 31. Thereafter, Defendant filed a motion for summary judgment, Plaintiff filed a response in opposition, Defendant filed a reply, and Plaintiff filed a surreply. *See* ECF Nos. 39, 42, 43, & 45. The Magistrate Judge then entered the instant R & R. *See* ECF No. 46.

## Discussion

Plaintiff pursues three federal claims under 42 U.S.C. § 1983: (1) procedural due process and (2) equal protection claims under the Fourteenth Amendment and (3) a conditions of confinement claim under the Eighth Amendment. The Magistrate Judge recommends granting Defendant's motion for summary judgment, concluding (a) Plaintiff's request for declaratory and injunctive relief is not moot; (b) as to Plaintiff's § 1983 claims, Defendant is entitled to Eleventh Amendment immunity for damages sought against him in his official capacity; (c) all three § 1983 claims fail on the merits; and (d) Defendant is entitled to qualified immunity because his conduct did not violate a federal right. *See* R & R at pp. 10–22 & n.10. Plaintiff has filed three specific objections to the R & R. *See* ECF No. 53.[5]

**I. Plaintiff's Objections**

**A. First Objection**

Plaintiff's first objection relates to the Magistrate Judge's recommendation regarding Eleventh Amendment immunity.[6] *See id.* at pp. 4–6. The Court notes Defendant moves for summary judgment

---

[5] Defendant has filed a response to Plaintiff's objections, and Plaintiff has filed a reply to Defendant's response. *See* ECF Nos. 55 & 56.

[6] Although Plaintiff argues Defendant is sued only in his individual capacity, Plaintiff *has* sued Defendant in both his individual and official capacities. As mentioned above, Plaintiff's Amended Complaint consists of *both* the complaint he filed in this Court *and* the complaint he originally filed in state court (the one removed to this Court). *See* ECF Nos. 26 & 26-4. The complaint originally filed in state court twice names Defendant "in his *official* and/or individual capacity." ECF No. 26-4 at p. 1 & ¶ 50 (emphasis added).

5

based on *Will v. Michigan Department of State Police*, wherein the Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989); *see also id.* at 66 ("[T]he scope of the Eleventh Amendment and the scope of § 1983 are . . . separate issues."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." (citing *Will*, 491 U.S. at 71)); *Rose v. SCDC*, No. 0:18-cv-03315-RBH, 2020 WL 289273, at *3–4 & n.7 (D.S.C. Jan. 21, 2020) (discussing the difference between "the Eleventh Amendment question" and "the § 1983 statutory question"). This threshold *statutory* reason is why Defendant cannot be sued for damages in his official capacity under § 1983, and the Court need not reach the separate issue of Eleventh Amendment immunity.[7] *See Rose*, 2020 WL 289273, at *3 n.7 (recognizing the proper order of analysis under *Vermont Agency*[8] and its progeny).

### B. Second Objection

Plaintiff's second objection concerns his procedural due process claim. *See* ECF No. 53 at pp. 6–12. A due process claim—whether procedural or substantive[9]—requires a plaintiff to demonstrate the deprivation of a protected interest in life, liberty, or property. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Here, Plaintiff *alleges* a state-created *liberty* interest "[t]o be free from mistaken out of state transfers," ECF No. 26 at ¶ 35(a), and because he is a convicted prisoner, the Court must

---

[7]   In any event, Plaintiff's objections appear to withdraw any official capacity claims against Defendant. *See* ECF No. 53 at pp. 4–6 (stating "that Plaintiff intended to bring suit against Defendant in his individual capacity," that "there is nothing . . . to suggest this action is a[n] official capacity suit," and that "Defendant is being sued in his individual capacity *alone*" (emphasis added)).

[8]   *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000).

[9]   Plaintiff appears to pursue only a *procedural* due process claim, but his complaint alleges "*substantive and/or procedural* protections afforded by the Fourteenth Amendment." ECF No. 26 at ¶ 36 (emphasis added). To the extent Plaintiff has alleged a substantive due process claim, it too fails because he cannot demonstrate deprivation of a liberty interest, as discussed herein. *See Beverati*, *supra*.

6

analyze his claim under the two-prong framework established in *Sandin v. Conner*, 515 U.S. 472 (1995).[10] *See Prieto v. Clarke*, 780 F.3d 245, 249–51 (4th Cir. 2015) (discussing the *Sandin* line of cases).

Under *Sandin*, a prisoner must show *both* (1) a protected liberty interest (arising either from the federal Constitution or from a state statute, regulation, or policy) *and* (2) denial of such an interest imposed "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 249 (quoting *Sandin*, 515 U.S. at 484). Plaintiff has not made either showing. Regarding the first *Sandin* prong, he does not have a federal or state-created liberty interest in being free from an interstate prison transfer,[11] and for this reason alone his due process claim fails. *See Couch v. Clarke*,

---

[10] The Magistrate Judge does not cite *Sandin* but does cite *Beverati*, which applied *Sandin*. *See* R & R at p. 17. The Court modifies the R & R by performing an explicit two-prong *Sandin* analysis.

[11] *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) ("[A]n interstate prison transfer . . . does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself."); *id.* at n.9 ("A conviction, whether in Hawaii, Alaska, or one of the contiguous 48 States, empowers the State to confine the inmate in any penal institution in any State unless there is state law to the contrary or the reason for confining the inmate in a particular institution is itself constitutionally impermissible."); *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 557 (D.S.C. 2008) ("It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison." (collecting cases)).

Plaintiff argues in his objections that he has a state-created liberty interest "to remain free from mistaken transfers to another state without due process." ECF No. 53 at p. 7. He cites Article XII, Section 9, of the South Carolina Constitution (which addresses SCDC's control of convicts) as well as South Carolina statutes and an SCDC policy dealing with the Interstate Corrections Compact (S.C. Code Ann. §§ 24–11–20, –30 and SCDC policy OP-21.03). *Id.* at pp. 7–8; ECF No. 42 at p. 6; ECF No. 45 at pp. 2–6. However, that state constitutional provision expressly permits inmate transfers by SCDC, *see* S.C. Const. Art. XII, § 9; and as the Magistrate Judge correctly explains, the Interstate Corrections Compact ("ICC") does not apply as Plaintiff's transfer was to a *private* prison not a *state-run* prison. *See Olim*, 461 U.S. at 246–47 (explaining the ICC "authorize[s] incarceration of a prisoner of one State in another State's prison"); S.C. Code Ann. § 24–11–20 ("'*State*' means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico."). Moreover, even assuming *arguendo* that the ICC applies, "the ICC creates no federal substantive rights, and is strictly a matter for state resolution." *Saunders v. Patseavouras*, 808 F.2d 835, 1986 WL 18337, at *1 (4th Cir. 1986) (unpublished table decision). Finally, Plaintiff's "whole debate . . . misses the point" and ultimately fails because he does not satisfy the second *Sandin* prong. *See Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (en banc) (rejecting similar arguments).

Although not discussed by the Magistrate Judge, the Court notes two South Carolina statutes appear to expressly permit transfers such as Plaintiff's, thus undermining the argument in his objections. *See* S.C. Code Ann. § 24–3–20(A) ("A person convicted of an offense against this State and sentenced to imprisonment for more than

7

782 F. App'x 290, 292 (4th Cir. 2019) ("If the inmate does not have such an interest, then the protections of the Due Process Clause do not apply." (citing *Prieto*, 780 F.3d at 248)); *see, e.g.*, *Khan v. Stirling*, No. 9:18-cv-03130-BHH-BM, 2019 WL 3976626, at *3–4 (D.S.C. July 24, 2019) (evaluating the same allegations made by an inmate transferred to the same Mississippi prison and finding no protected liberty interest), *adopted by*, 2019 WL 3973708 (D.S.C. Aug. 22, 2019); *Russell v. Stirling*, No. 2:19-cv-01965-CMC-MGB, 2019 WL 4935522, at *1–2 (D.S.C. Sept. 12, 2019) (summarily dismissing a due process claim based on an inmate's transfer to the same Mississippi prison), *adopted by*, 2019 WL 4930211 (D.S.C. Oct. 7, 2019); *Harrell v. Stirling*, No. 2:19-cv-01699-CMC-MGB, 2019 WL 7195643, at *2 (D.S.C. Sept. 12, 2019) (same), *adopted by*, 2019 WL 4926367 (D.S.C. Oct. 7, 2019).

The second *Sandin* prong[12] requires Plaintiff to demonstrate that the conditions at the Mississippi prison "were atypical and significantly harsh compared to those of the general population" in South Carolina prison. *See Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017) (brackets omitted) (quoting *Incumaa v. Stirling*, 791 F.3d 517, 528–29 (4th Cir. 2015) ("noting that the general prison

---

three months is in the custody of the South Carolina Department of Corrections, and *the department shall designate the place of confinement where the sentence must be served. . . . The department may designate as a place of confinement any available, suitable, and appropriate institution or facility, including a regional, county, or municipal jail or prison camp, <u>whether maintained by the department or by some other entity</u>.*" (emphases added)); *id.* at § 24–3–30(A) ("Notwithstanding any other provision of law, a person convicted of an offense against the State must be in the custody of the Department of Corrections, and the department shall designate the place of confinement where the sentence must be served. *The department may designate as a place of confinement an available, a suitable, and an appropriate institution or facility <u>including, but not limited to</u>, a regional, county, or municipal jail or prison camp, <u>whether maintained by the Department of Corrections, or by some other entity</u>.*" (emphases added)). *See also Skipper v. SCDC*, 633 S.E.2d 910, 913 (S.C. Ct. App. 2006) ("In South Carolina, the authority to determine where an inmate is housed is vested in the Department of Corrections.").

12 Although the Court need not reach the second *Sandin* prong, *see Prieto*, 780 F.3d at 252 n.8 ("[A] court need only reach the atypicality question if an inmate has been deprived of a state-created liberty interest."), the Court addresses it for the sake of completeness and because Plaintiff objects to the Magistrate Judge's recommendation regarding atypicality. *See, e.g.*, *id.* ("Nevertheless, we address the atypicality inquiry because it is Prieto's principal contention and was the basis for the district court's holding.").

8

population is the 'touchstone' in cases where inmate was sentenced to confinement in the general population and later transferred")). "This analysis necessarily is fact specific," but ultimately "is a legal determination." *Beverati*, 120 F.3d at 503. The Fourth Circuit has instructed that

> changes in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently.

*Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (en banc) (citing cases later discussed in *Sandin*). The R & R thoroughly summarizes the conditions at the Mississippi prison as alleged by Plaintiff. *See* R & R at pp. 16–17. In brief, Plaintiff claims he was "confined to the pod 23 hours" a day with "1 hour [of] recreation,"[13] did not enjoy various privileges otherwise available in SCDC facilities, and was unable to work or participate in various SCDC programs. *See* ECF No. 26 at ¶¶ 21, 27, 31. While "more burdensome than those imposed on the general prison population" in South Carolina, *see Beverati*, 120 F.3d at 504, the conditions Plaintiff temporarily experienced while in the Mississippi prison were not an atypical and significant hardship under *Sandin*'s second prong. *See, e.g.*, *White v. Turner*, 671 F. App'x 162, 163–64 (4th Cir. 2016) (affirming a grant of summary judgment because the plaintiff "failed to provide evidence to support a finding that the conditions of his confinement posed an atypical and significant hardship in relation to the ordinary incidents of prison life, as required to establish a liberty interest giving rise to a due process claim"); *Khan*, 2019 WL 3976626, at *3–4

---

[13]    In his objections, Plaintiff characterizes the living conditions as "solitary confinement," ECF No. 53 at p. 9, but his Amended Complaint and affidavits from other inmates at the Mississippi prison clearly indicate he lived in a "pod" and shared "living quarters" with other inmates. *See* ECF No. 26 at ¶¶ 27, 31; ECF No. 26-1 at pp. 6–9; ECF No. 26-4 at ¶ 29.

(involving nearly identical allegations and finding no atypicality under *Sandin*). Because Plaintiff fails to satisfy either *Sandin* prong, the Court must dismiss his procedural due process claim.

### C. Third Objection

Plaintiff's last objection concerns his equal protection claim. *See* ECF No. 53 at pp. 13–14. First, he requests leave to conduct discovery on the claim. *Id.* at p. 14. However, discovery ended in October 2019, *see* Local Civ. Rule 26.04 (D.S.C.) (providing that pretrial discovery in a pro se prisoner case must be completed within ninety days after "joinder of issues"); *Bachman v. M. Lowenstein & Sons, Inc.*, 85 F.R.D. 10, 12 (D.S.C. 1979) (explaining "joinder of issues" occurs when the defendant serves an answer to the complaint), and Plaintiff has not demonstrated good cause to reopen discovery.[14] *See Bachman*, 85 F.R.D. at 13 ("[W]hen a party is dilatory in pursuing discovery and the time period for discovery has expired, any attempt to reopen discovery must be denied[.]"); *see, e.g.*, *Vanzant v. Weissglass*, No. 8:15-cv-02876-RBH, 2016 WL 4607595, at *3 (D.S.C. Sept. 6, 2016) (denying a discovery motion because it was untimely under Local Civil Rule 26.04), *aff'd*, 692 F. App'x 728 (4th Cir. 2017).

Second, Plaintiff argues that even if his discovery request is denied, his equal protection claim should survive summary judgment. Although de novo review is not required in light of this "general and conclusory" objection, *see Orpiano*, 687 F.2d at 47, the Court has nevertheless reviewed the claim de novo and concludes summary judgment is proper. To establish an equal protection claim based on his transfer to the Mississippi prison, Plaintiff "must prove that he was treated differently than other similarly situated inmates as a result of intentional discrimination and that his disparate treatment was

---

[14] After filing his objections, Plaintiff filed a "Motion for Leave to Request Second Set of Interrogatories/Discovery from Defendant." *See* ECF No. 57. The Court will deny this discovery motion for the same reason explained above.

not rationally related to any legitimate penological interest." *Tate v. Parks*, 791 F. App'x 387, 391 (4th Cir. 2019) (citing *King v. Rubenstein*, 825 F.3d 206, 220–21 (4th Cir. 2016)). As the Magistrate Judge correctly explains, Plaintiff has not shown that Defendant treated him differently than other similarly situated inmates with any discriminatory purpose, or that his transfer was not rationally related to a legitimate penological interest. Accordingly, Plaintiff's equal protection claim cannot survive summary judgment.

The Court will grant Defendant's motion for summary judgment as to Plaintiff's federal § 1983 claims.[15]

## II. Pendent State-Law Claims

Plaintiff's Amended Complaint in this consolidated action contains the complaint originally filed in the case removed from state court—which asserted both federal *and state-law* claims. *See* ECF No. 26-4. Thus, those state-law claims remain pending, although this matter was not specifically addressed by the Magistrate Judge. Because no federal claims remain, the Court declines to exercise supplemental jurisdiction over the state-law claims and will remand them to state court. *See* 28 U.S.C. § 1367(c)(3) (permitting dismissal of pendent state-law claims upon dismissal of federal claims); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (recognizing that when "federal claims are dismissed before trial, . . . state claims should be dismissed as well").

To accomplish remand, the Court will deconsolidate the removed case with the state-law claims (No. 8:19-cv-01158-RBH, which contains Plaintiff's complaint originally filed in state court) from the

---

[15] Plaintiff does not object to the Magistrate Judge's recommendation regarding his Eighth Amendment conditions of confinement claim or that regarding qualified immunity, and the Court discerns no clear error regarding those recommendations. *See Diamond*, 416 F.3d at 315–16 (explaining that absent a timely filed specific written objection, a district court need only review for clear error).

federal case (No. 8:19-cv-01316-RBH, which cannot be remanded to state court). *See Payne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 75 F. App'x 903, 906 (4th Cir. 2003) (explaining the remand principles a district court must follow when a removed case has been consolidated with a federal case); *see, e.g.*, *id.* ("[T]he district court should have addressed the propriety of remanding the two cases—the removed case and the federal case—independently. To the extent that the district court remanded the [plaintiffs'] federal case to state court, that remand was in error."). The Court modifies the R & R to reflect the disposition of Plaintiff's state-law claims.

## Conclusion

For the foregoing reasons, the Court **ADOPTS AS MODIFIED** the Magistrate Judge's R & R [ECF No. 46/27], **DENIES** Plaintiff's discovery-related motion [ECF No. 57/45], and **GRANTS** Defendant's motion for summary judgment [ECF No. 39/27] as to Plaintiff's federal § 1983 claims. The Court hereby **DECONSOLIDATES** Civil Action No. 8:19-cv-01158-RBH from Civil Action No. 8:19-cv-01316-RBH and **DISMISSES** Civil Action No. 8:19-cv-**01316**-RBH in its entirety *with prejudice*. As to Civil Action No. 8:19-cv-**01158**-RBH, the Court **DISMISSES** Plaintiff's federal claims *with prejudice* and **REMANDS** his state-law claims (the ones raised in the original/removed complaint in Civil Action No. 8:19-cv-01158-RBH, *see* ECF Nos. 1-1 & 26-4) to the Richland County Court of Common Pleas for further proceedings. The Court **DIRECTS** the Clerk to mail a certified copy of this Order to the clerk of the Richland County Court of Common Pleas *only as to Civil Action No. 8:19-cv-01158-RBH.*

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
March 23, 2020  R. Bryan Harwell
  Chief United States District Judge